IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES J. CARTER,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        1:13cv613
                                    )
ARCHDALE POLICE DEPARTMENT,         )
DAVID JONES, CITY OF ARCHDALE,      )
GARLAND YATES, and RANDOLPH         )
COUNTY DISTRICT ATTORNEY'S          )
OFFICE,                             )
                                    )
                Defendants.         )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is a putative civil rights action brought under 42 U.S.C. § 1983. Plaintiff James J. Carter, who appears *pro se*, alleges that Defendants Archdale Police Department, policeman David Jones, the City of Archdale, prosecutor Garland Yates, and the Randolph County District Attorney's Office violated his civil rights when they investigated and prosecuted him in Randolph County Superior Court in North Carolina. (Doc. 30 ("Compl.") at 2, 18, 30, 34.) Before the court are several motions. Defendants Yates and the Randolph County District Attorney's Office ("RCDAO," collectively with Yates, "the DA Defendants") have filed two motions to dismiss (Docs. 12, 33), a motion for judgment on the pleadings (Doc. 54), and a motion for sanctions against Carter (Doc. 43). Carter has filed two

motions for sanctions against the DA Defendants (Docs. 40, 46), a motion for a contempt citation against Yates (Doc. 49), a motion to compel a Rule 26(f) conference (Doc. 38), and a motion to expedite the determination of pending motions (Doc. 56).

For the reasons set forth below, the motions to dismiss will be granted; the motion for judgment on the pleadings will be denied as moot; all four sanctions-related motions will be denied; and the motion to expedite will be denied as moot. Because Carter's Rule 26(f) motion involves a scheduling matter, this court declines to rule on it to allow the Magistrate Judge to set the schedule for this case.

## I.    BACKGROUND

All of the pending motions concern disputes between Carter and the DA Defendants. The court, therefore, will only briefly describe the alleged incidents relating to Jones, the Archdale Police Department, and the City of Archdale in order to provide context for the allegations relating to the DA Defendants. The complaint, read in the light most favorable to Carter, alleges the following:

In May 2012, the Archdale Police Department investigated Carter for allegedly stealing $2,400 from his employer, Ornamental Mouldings, LLC. (Compl. at 5-10.) One of the investigating officers was Defendant Jones. (Id.) Carter and Jones have had a long-standing feud. (Id. at 3.) On May 16,

2012, Jones obtained an arrest warrant for Carter. (Id. at 11.) Carter claims that between May 17 and May 22, Jones and the Archdale Police Department subjected him and his family to a "campaign of harassment" in attempts to execute the arrest warrant. (Id. at 12-16.) Carter was out of the state during that time and, upon his return home on May 22, turned himself in to the Randolph County Sheriff's Office rather than the Archdale Police Department, because he feared for his safety. (Id. at 16.) Carter was arrested that same day for "Larceny by Employee." (Id. at 16-17.)

The DA Defendants initiated criminal proceedings against Carter. (Id. at 18.) While they claimed to be prosecuting Carter from July 9, 2012, to August 5, 2013, he says that no indictment was ever produced for him despite repeated requests. (Id. at 18-26.) Carter alleges that Jones and the DA Defendants conspired to prosecute him under a false or non-existent indictment. (Id. at 19-20.) Between July 9, 2012, and August 5, 2013, the DA Defendants held multiple hearings as part of Carter's prosecution; those hearings were before a judge who Carter charges is biased against him because he previously accused the judge of corruption. (Id. at 24-25.) According to Carter, the DA Defendants and his own public defender attempted to pressure him into pleading guilty to the charge. (Id. at 25.) Carter charges that the DA Defendants have used their

power to block a superior court judge from ruling on his repeated motions for discovery. (Id.) They also claimed to have set a trial date for July 29, 2013, but no trial was held then and Carter was never informed it was canceled. (Id. at 26.)

On July 26, 2013, Carter filed a complaint in the present case and amended it on August 6. (Docs. 1, 2.) On August 12, 2013, his public defender informed him that the DA Defendants claimed to have a second indictment against him and that the first indictment (charging "Larceny by Employee") had been dismissed. (Compl. at 26-27.) Carter then filed another amended complaint, which is the current complaint, on September 4. (Id. at 1.) That complaint contains multiple paragraphs, sometimes with dozens of subparagraphs, which are not organized into identifiable causes of action. Read liberally, Carter alleges that Jones and the Archdale Police Department framed him for a crime he did not commit, coerced statements from his wife, harassed him and his family in executing an arrest warrant, wrongfully entered his home, and publicly humiliated him. (Id. at 2-18.) He further alleges that the City of Archdale and the Archdale Police Department negligently supervised the police officers, including Jones, who violated his civil rights. (Id. at 34-38.) As to the DA Defendants, he alleges they wrongfully and maliciously prosecuted him, fraudulently claimed to possess

4

a criminal indictment against him, conspired to violate his constitutional rights, used State resources and the authority of their State offices to persecute him, and negligently supervised RCDAO employees who then violated his civil rights.  (<u>Id.</u> at 1-39.)

Carter has lodged numerous complaints against the DA Defendants with various governmental organizations.  (<u>Id.</u> at 27-28.)  He claims that the DA Defendants' actions have caused him great emotional harm, ruined his reputation and employability, and caused him to incur expenses to defend himself.  (<u>Id.</u> at 28-29.)  He alleges that the DA Defendants have violated his civil rights, both through their own actions and through their failure to supervise the employees of the RCDAO.  (<u>Id.</u> at 30-33.)  Carter seeks $100,000,000 in compensatory and punitive damages from each Defendant, an injunction preventing any employee of the RCDAO or Archdale Police Department from having contact with him or his family, an order requiring training and reforms for the City of Archdale and the Archdale Police Department, and an order requiring that his criminal records relating to this case be expunged.  (<u>Id.</u> at 38-39.)

## II. ANALYSIS

### A.  Motions to Dismiss

The DA Defendants have filed two motions to dismiss Carter's claims pursuant to Federal Rule of Civil Procedure

12(b)(1), (2), (5), (6), and (7). (Docs. 12, 33.) Among other things, they argue that the Eleventh Amendment and common law sovereign immunity deprive this court of subject matter jurisdiction over Carter's claims and that Carter fails to state a claim upon which relief can be granted because of prosecutorial immunity. Carter opposes those motions. (Docs. 31, 37.)

In addressing this case, the court is mindful that it must construe *pro se* litigants' complaints liberally, thus permitting a potentially meritorious case to develop if one is present. Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). However, this does not require that the court become an advocate for the unrepresented party. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). "Only those questions which are squarely presented to a court may properly be addressed." Id.

### 1. Sovereign Immunity

A plaintiff bears the burden of proving this court's subject matter jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a legal determination to be made by the court. Id. When assessing a challenge to subject matter jurisdiction, the court may look beyond the face of the complaint and consider other evidence

outside the pleadings without converting the motion into one for summary judgment. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A court should dismiss for lack of federal subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, 945 F.2d at 768.

The DA Defendants assert they enjoy sovereign immunity under the Eleventh Amendment. (Doc. 13 at 3-4.) The Fourth Circuit has not conclusively established whether a dismissal based on Eleventh Amendment immunity is a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Andrews v. Daw, 201 F.3d 521, 524-25 n.2 (4th Cir. 2000). Courts generally consider motions alleging Eleventh Amendment immunity under Rule 12(b)(1), however. See Blackburn v. Trs. of Guilford Technical Cmty. Coll., 822 F. Supp. 2d 539, 542 n.2 (M.D.N.C. 2011) (collecting cases).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although by its terms the Eleventh Amendment applies to suits brought against a State by "Citizens of another State," it is

well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974). It is also well understood that the Eleventh Amendment bars suits against States and any State instrumentality properly characterized as an "arm of the State." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997). Eleventh Amendment immunity has only limited exceptions: (1) a State may waive its immunity; (2) Congress may abrogate a State's immunity; and (3) a plaintiff may sue for prospective injunctive relief against State officials acting in violation of federal law pursuant to the doctrine of Ex parte Young, 209 U.S. 123 (1908). See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 436-37 (2004) (citing Ex parte Young, 209 U.S. at 123); Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999).

The RCDAO, if it is indeed an entity capable of being sued, would be a State agency, and Yates is a State official when acting in his official capacity as District Attorney. Mathis v. Town of Waynesville, No. 1:09cv296, 2009 WL 6067335, at *8 (W.D.N.C. Dec. 4, 2009) (unpublished) (finding that the North Carolina Constitution provides for the office of the District Attorney and prosecutorial districts, N.C. Const. art. IV, § 18; that State statutory law divides the State into prosecutorial

districts, N.C. Gen. Stat. 7A-60; and that District Attorneys are therefore State officials), <u>recommendation adopted</u>, 2010 WL 1052331 (W.D.N.C. Mar. 19, 2010) (unpublished).[1]  There is no evidence that the RCDAO, the State of North Carolina, or Yates has waived immunity in this case.  Carter also does not point to any federal statute abrogating immunity for prosecutors in the performance of their duties, and the court is aware of none.  On the contrary, "[i]t is now well settled that a state [including a state agency or official] cannot be sued under [42 U.S.C.] § 1983."  <u>Kelly v. Maryland</u>, 267 F. App'x 209, 210 (4th Cir. 2008) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)).  Carter's claims for damages against the DA Defendants (Compl. at 38) therefore fail as a matter of law, because damages suits are barred by Eleventh Amendment immunity. Carter's claim for injunctive relief against the RCDAO (<u>id.</u>) also fails as a matter of law, because suits for injunctive

---

[1] The RCDAO argues that it is not a legal entity capable of being sued, but provides no authority.  "The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held."  <u>Avery v. Cnty. of Burke</u>, 660 F.2d 111, 113-14 (4th Cir. 1981).  North Carolina law does not answer this question, but the court need not decide the issue because Carter's claims fail on other grounds.  Generally, district attorneys' offices are not legal entities under § 1983.  <u>See, e.g.</u>, <u>Revene v. Charles Cnty. Comm'rs</u>, 882 F.2d 870, 874 (4th Cir. 1989) (citing <u>Hancock v. Washtenaw Cnty. Prosecutor's Office</u>, 548 F. Supp. 1255 (E.D. Mich. 1982)); <u>Thompson v. Police Dep't of Philadelphia</u>, Civ. A. No. 10-6083, 2011 WL 4835831, at *2 (E.D. Pa. Oct. 12, 2011) (noting Third Circuit view that district attorneys' offices are not legal entities capable of being sued under § 1983).

relief are only permitted against State officials, not State agencies. See, e.g., Frew, 540 U.S. at 437.

Carter's only remaining claim – for injunctive relief against Yates – seeks an order restraining RCDAO employees from having any contact with Carter, his family, or his property. Even assuming all the facts in the complaint to be true, however, the only contact the DA Defendants have had with Carter has been in State court hearings and through Carter's public defender; that is, all alleged contact is within the context of the ongoing criminal case. (Compl. at 21, 24-25, 29.) Carter does not allege that Yates or any employee of the RCDAO harassed him in any other way. His request for injunctive relief therefore is not proper, as the conduct he seeks to restrain directly involves his ongoing state criminal proceedings. Under principles of comity and federalism, a federal court should not interfere with ongoing state criminal proceedings absent extraordinary circumstances. See Younger v. Harris, 401 U.S. 37, 45 (1971). It is clear that Carter believes that the pending state criminal charges against him lack merit, but he must challenge the legitimacy of the charges against him in state criminal court and then, if necessary, pursue appropriate relief. See Ballenger v. Owens, 352 F.3d 842, 845-46 (4th Cir. 2003).

## 2. Prosecutorial Immunity

Carter does not specify whether he is suing Yates in his official capacity as District Attorney or in his individual capacity. Reading Carter's complaint liberally, the court will assume he intends both. As previously stated, Carter's claims against Yates in his official capacity are barred by sovereign immunity and _Younger_ abstention. The court now turns to Carter's claims against Yates in his individual capacity.

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." _Francis v. Giacomelli_, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). A complaint fails if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009) (quoting _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 570 (2007)).[2]

"[A] prosecutor enjoys absolute immunity from suit for conduct 'in initiating and in presenting the State's case.'" _Springmen v. Williams_, 122 F.3d 211, 213 (4th Cir. 1997) (quoting _Imbler v. Pachtman_, 424 U.S. 409, 431 (1976)). That

---

[2] The "no set of facts" standard cited by the DA Defendants (Doc. 13 at 5) is no longer applicable. _See Twombly_, 550 U.S. at 563. Additionally, the North Carolina pleading rules (Doc. 13 at 5 (citing _Dixon v. Stuart_, 85 N.C. App. 338 (1987))) are not applicable in federal court.

immunity extends to decisions about "whether and when to prosecute, [and] whether to dismiss an indictment against particular defendants." Imbler, 424 U.S. at 431 n.33. Yates's decisions, therefore, to prosecute Carter, to dismiss the first indictment and issue a superseding indictment, to hold hearings, to set a trial date, and all his other actions "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity. Id. at 430.

As to Carter's claim that the two indictments against him do not exist, the court notes that the DA Defendants have filed copies of both – one dated July 9, 2012, and a superseding indictment dated July 8, 2013. (Doc. 33-1 at 3-6.) The Fourth Circuit routinely takes judicial notice of court records, including indictments. See, e.g., United States v. Kane, 434 F. App'x 175, 176 (4th Cir. 2011) (taking judicial notice of the indictment charging the defendant with burglaries); Lolavar v. de Santibanes, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking judicial notice of court records); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (taking judicial notice in a subsequent civil case of defendants' guilty pleas in the related criminal prosecution for arson). In this case, the court has conducted an independent investigation by obtaining from the Clerk of Superior Court in Randolph County signed and certified copies of the first pages of both the original and

superseding indictment against Carter. The court therefore is satisfied that the indictments filed against Carter in Randolph County Superior Court actually exist and takes judicial notice of them.

Accordingly, the motions to dismiss filed by the DA Defendants (Docs. 12, 33) will be granted, and all claims against those Defendants will be dismissed with prejudice. The court therefore need not reach the other arguments put forth by the DA Defendants[3] or their motion for judgment on the pleadings (Doc. 54).

## B.   Motions for Sanctions

Before the court are four sanctions-related motions. (Docs. 40, 43, 46, 49.) The court will address Carter's three motions first.

---

[3] The DA Defendants' defense of insufficient service of process appears to have merit. They assert that Carter did not serve the appropriate person under North Carolina Rule of Civil Procedure 4(j)(4), as incorporated by Federal Rule of Civil Procedure 4(j)(2)(B). (Doc. 13 at 11.) Carter attempted to serve Yates and the RCDAO by having his wife deliver the complaint and summons to the RCDAO office in Asheboro and mail the complaint and summons to both parties. (Doc. 16.) Those forms of service do not comply with Rule 4. Giving Carter a chance to perfect service of process, however, would be futile, as his claims fail on the merits for the reasons noted. In addition, to the extent Carter attempts to have his references to malicious prosecution construed as a claim here, it is "clear that there is no such thing as a '§ 1983 malicious prosecution' claim." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). Finally, to the extent he asserts that persons within the RCDAO failed to properly supervise anyone, it is equally clear that there is no *respondeat superior* liability under § 1983 absent evidence of an official policy or custom. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).

On October 9, 2013, Carter moved for sanctions under Federal Rule of Civil Procedure 11(b)(3), alleging that David Adinolfi, Special Deputy Attorney General for North Carolina and counsel for the DA Defendants, "lied" in his filings to this court and filed forged and fraudulent documents. (Doc. 40.) Rule 11(b)(3) provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3). To support his claims, Carter attaches print-outs of what he represents are search results from the North Carolina Administrative Office of the Courts website for the criminal court calendars in Randolph County: one from October 4, 2013, showing his name, birthday, and case number (2013CRS053047) listed (Doc. 41-1), and one from September 16, 2013, showing a list of "Carters" and their birthdays and case numbers, but no entry for himself (Doc. 41-2). Carter alleges that the search results prove that the indictments are "forged and fraudulent" and that his criminal case was only entered into the computer database after he filed his response to Adinolfi's second motion to dismiss (Doc. 37), challenging the authenticity of the records. (Doc. 41 at 2-3.)

In response, Adinolfi denies that any of his filings or statements has been false. (Doc. 42.) He attaches a copy of the Randolph County Superior Court Calendar, which lists Carter's case (2013CRS053047) (Doc. 42-1), and a copy of an October 6, 2013 email from Carter to Adinolfi, in which, Adinolfi contends, Carter alludes to the ongoing criminal proceedings against him (Doc. 42-2) and is evidence that the criminal case against Carter exists and that he is aware of it.

Regardless of whether the email may be construed as an acknowledgment by Carter of the pendency of a criminal case against him, the indictments of which this court has taken judicial notice establish that a criminal case does exist. While Carter has supplied some evidence of his inability to find his name and case listed on the website for the North Carolina Administrative Office of the Courts, he has not demonstrated that there can be no reasonable explanation for why that is so. Indeed, the website acknowledges that a user may not be able to find his name or case in the database and directs such users to consult the local county for further information. See *Frequently Asked Questions*, THE NORTH CAROLINA ADMINISTRATIVE OFFICE OF THE COURTS, http://www.nccourts.org/Support/FAQs/FAQs.asp?Type=22#309 (last visited Feb. 24, 2014). In light of the actual indictments filed in Randolph County, which constitute the best evidence of their existence, Carter's evidence falls short of demonstrating

that Adinolfi has made any misrepresentation to the court. Accordingly, Carter's motion for sanctions will be denied.

On October 17, 2013, Carter moved again for sanctions against Adinolfi. (Doc. 46.) Carter alleges that Adinolfi sent him an "intimidating, threatening, and harassing blackmail letter" on September 23, 2013. (Doc. 47 at 3.) He quotes from the letter in his motion (id. at 6-8) and attached it to his prior motion for sanctions as an exhibit (Doc. 41-3). Adinolfi opposes Carter's second motion on the same grounds as the first. (Doc. 48.)

Although Carter claims that the letter "violates the Federal Rules of Civil Procedure," the pertinent sanctions rule – Rule 11 – does not govern communications between opposing counsel, or between opposing counsel and a *pro se* litigant. Rule 11 governs filings with the court. See Fed. R. Civ. P. 11(b); see also On Time Aviation, Inc. v. Bombardier Capital Inc., 570 F. Supp. 2d 328, 335 (D. Conn. 2008) ("Rule 11 sanctions are restricted to representations to the Court (and not letters between counsel)."); Okoampa-Ahoofe v. Johnson & Higgins, No. 99 CIV. 5820 (AGS), 2000 WL 1471552, at *5 (S.D.N.Y. Sept. 29, 2000) ("Communications between attorneys on the merits of the claims is part of the litigation process, and such communications . . . affect the sanctions analysis only insofar as they relate to alleged misrepresentations to the

Court."). Carter cannot demand sanctions based on Adinolfi's letter under Rule 11 because the letter was not "present[ed] to the court"; it was a communication to Carter. Fed. R. Civ. P. 11(b).[4] No sanctions are warranted on the basis of this letter, and Carter's motion will therefore be denied.

On October 18, 2013, Carter moved for a contempt citation and sanctions against Yates. (Doc. 49.) He alleges that Yates has scheduled "sham" hearings in Carter's State court criminal matter in retaliation for Carter's filings in this action. (Doc. 50 at 1-2.) He also alleges that Yates "had a Deputy Superior Court Clerk prepare and mail a fraudulent bond forfeiture notice claiming that [Carter] had failed to appear for a hearing on the non-existent indictment on October 7, 2013." (Id. at 2.) Yates opposes Carter's motion. (Doc. 51.)

For the same reasons as previously stated, this court will not review the proceedings of an ongoing state criminal matter absent extraordinary circumstances, which are not present here. The court also notes, for the reasons previously stated, that

---

[4] Even if the court could issue sanctions under Rule 11 for a letter from opposing counsel to a *pro se* litigant, it would not do so here. There is nothing objectionable or unreasonable in the letter. Contrary to Carter's assertions (Doc. 47 at 1-2), communications between opposing parties need not be filed with the court and, indeed, should not be filed with the court unless for some proper purpose. Adinolfi's failure to do so, therefore, is not proof of any nefarious purpose. As to the content of the letter, it merely informs Carter of Adinolfi's belief that Carter's claims are baseless and requests that Carter drop the lawsuit voluntarily. (Doc. 41-3.)

Yates enjoys absolute immunity in prosecuting Carter and may schedule hearings as needed; prosecutorial immunity shields Yates from any inquiry into his motives, regardless of their propriety. On the issue of the bond forfeiture notice based on Carter's absence from a hearing, Carter must challenge the notice through proper procedures in the Randolph County Clerk's Office if indeed he was present or was instructed to leave, as he alleges. (Doc. 50 at 3-5.) This court is not the proper forum to determine the facts of what happened at Carter's October 7, 2013 hearing. Carter's motion on these bases will be denied.

Lastly, the DA Defendants moved for sanctions against Carter on October 14, 2013. (Doc. 43.) The motion and its accompanying exhibit note that Adinolfi warned Carter of the legal insufficiency of his claims and informed him of Yates's "two kinds of immunity." (Doc. 43-1.) The DA Defendants allege that, despite this warning, Carter has heaped threats, accusations of fraud, and frivolous filings on them. (Doc. 43 at 2-3.) They allege further that Carter "has engaged in a pattern of groundless and vexatious litigation." (Id. at 3.) They request that this court impose a prefiling injunction on Carter, so that he may not file a document without certification from a licensed attorney and the court. Carter opposes the motion. (Doc. 52.)

Rule 11 applies to *pro se* plaintiffs as well as attorneys. Fed. R. Civ. P. 11(b). Prefiling injunctions may be appropriate when a plaintiff has a history of continuing vexatious and frivolous litigation. The bar for what constitutes such a history is much higher than what is present here, however. <u>See, e.g.</u>, <u>McMahon v. F & M Bank-Winchester</u>, 45 F.3d 426 (4th Cir. 1994) (unpublished) (approving of prefiling injunction after nine years of litigation in state and federal court on the same claims); <u>Potter v. Mosteller</u>, 199 F.R.D. 181 (D.S.C. 2000) (imposing prefiling injunction after more than six years of frivolous lawsuits on the same claims); <u>Williams v. Harkleroad</u>, 838 F. Supp. 2d 363 (M.D.N.C. 2011) (imposing prefiling injunction after more than eight years of vexatious litigation). Carter commenced this action five months ago and has not previously sued any Defendant on the same facts. Although his filings are numerous, a prefiling injunction is not warranted. <u>However, Carter is warned that his *pro se* status does not entitle him to avoid the Federal Rules of Civil Procedure and the Local Rules of this court, which will be enforced</u>. <u>All filings and matters before the court must be well grounded in fact and law, as required by Rule 11</u>. The motion for sanctions and request for prefiling injunction will therefore be denied at this time.

### C. Motion to Expedite

On November 22, 2013, Carter moved to expedite the determination of all pending motions in this case.[5] (Doc. 56.) He believes that the delay in this court's ruling on the pending motions compared to the rapidity in its ruling against Carter on his motion for an emergency stay and injunction (Docs. 6 (motion), 18 (Magistrate Judge's recommendation), 32 (order)) indicate that this court finds merit in his claims but does not want to rule in his favor (Doc. 56 at 2).

As to expediting a determination, Carter's motion is moot insofar as a determination has now been made. To the extent Carter seeks to expedite his motion for a Rule 26(f) conference, that motion is denied. The Magistrate Judge will set a scheduling order in due course. Otherwise, Carter's speculation as to the reasons why his motions were not decided earlier is unwarranted and false. All motions are decided in due course, given the heavy workload of the court.

## III. CONCLUSION

For the reasons stated, the court finds that sovereign immunity, <u>Younger</u> abstention, and prosecutorial immunity require

---

[5] Carter's request was in the form of a letter to the Chief Judge of this District, which is not the appropriate way to file a motion to expedite. All motions must be filed with the Clerk of Court and served on opposing counsel. <u>See</u> Local Rule 7.3.

the dismissal of Carter's claims against the DA Defendants and that no sanctions are warranted against either party.

IT IS THEREFORE ORDERED that the motions to dismiss filed by Garland Yates and the Randolph County District Attorney's Office (Docs. 12, 33) are GRANTED and Carter's claims against those Defendants are DISMISSED WITH PREJUDICE. The motion for judgment on the pleadings (Doc. 54) is DENIED AS MOOT.

IT IS FURTHER ORDERED that all pending motions for sanctions are DENIED. (Docs. 40, 43, 46, 49.)

IT IS FURTHER ORDERED that Carter's motion to compel a Rule 26(f) conference (Doc. 38) is referred to the assigned Magistrate Judge and that Carter's motion to expedite (Doc. 56) is DENIED AS MOOT.

/s/   Thomas D. Schroeder
United States District Judge

February 25, 2014