IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES J. CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:13CV613 |
| ) | |
| ARCHDALE POLICE DEPARTMENT, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on an Objection to Subpoena and Motion to Quash filed by Assistant Clerk of Superior Court Richard Haynes (Docket Entry 63). (See Docket Entry dated May 2, 2014.) For the reasons that follow, the instant Motion will be granted in part and denied in part, in that the Court will modify the subpoena at issue to require production only of a copy of the contents of the state court file for case number 12CR53047.[1]

BACKGROUND

Plaintiff, proceeding pro se, filed a Complaint alleging violations of 42 U.S.C. § 1983 based largely on events related to a state court criminal proceeding identified as case number "12CRS53047" (Docket Entry 1 at 2 (¶ 1(a))). (See id. at 2-32.)

---

[1] As detailed in the Background section, the subpoena at issue refers to case number "12CR53047" (Docket Entry 63-1 at 2 (emphasis added)), whereas the Complaint refers to case number "12CRS53047" (Docket Entry 1 at 2 (¶ 1(a)) (emphasis added)). The Court deems this inconsistency a mere scrivener's error and concludes from the statement by Assistant Clerk Haynes appended to the instant Motion (see Docket Entry 63-2 at 1) that he knows the case to which Plaintiff refers in the subpoena at issue, regardless of whether its case number actually includes the letters "CR" or "CRS."

After the discovery period commenced (see Text Order dated Mar. 25, 2014), Plaintiff apparently obtained from a Deputy Clerk of this Court a subpoena, bearing an issuance date of April 7, 2014, directed to "Randolph County District Court Clerk," with a compliance deadline of noon on May 6, 2014 (Docket Entry 63-1 at 1). The subpoena demands production of "[a]ll documents, records, Court Files, Orders, transcripts, recordings, communications, e-mails, voicemails, or text messages related to Case 12CR53047 and/or a hearing scheduled and/or held in Randolph County District Court in July 2012 in Case 12CR53047." (Id. at 2.)

On April 22, 2014, Assistant Clerk Haynes, through counsel and via the Court's CM/ECF system, filed the instant Motion. (Docket Entry 63.) A document appended to the instant Motion, bearing the letterhead of the Randolph County Clerk of Superior Court, as well as the signature of Assistant Clerk Haynes, states that the Office of the Randolph County Clerk of Superior Court received the above-described subpoena "on April 8th . . . in regular first class mail." (Docket Entry 63-2 at 1; see also Docket Entry 67 at 2-3 (setting out Plaintiff's assertion that his wife served the subpoena in question "on April 7, 2014," but without reference to manner of service).) According to Assistant Clerk Haynes, because the subpoena "dealt with a Randolph County criminal case it was turned over to [him]." (Docket Entry 63-2 at 1.)[2]

---

[2] It does not appear that North Carolina law has established a position of "Randolph County District Court Clerk." See North Carolina Admin. Office of the Cts., North Carolina Jud. Sys. 23
(continued...)

The instant Motion's Certificate of Service mistakenly states that service thereof occurred on Plaintiff because the CM/ECF system "will send notification of such filing to" him. (Docket Entry 63 at 3.) In fact (as reflected in the electronic receipt created when Assistant Clerk Haynes filed the instant Motion), because Plaintiff proceeds pro se and does not have permission to act as an electronic-filer, the CM/ECF system did <u>not</u> forward Assistant Clerk Haynes's instant Motion to Plaintiff. (<u>See</u> Docket Entry 63, Notice of Elec. Filing.) Plaintiff, however, received

---

²(...continued)
(2008 ed.) ("The clerk of superior court is responsible for all clerical and record-keeping functions of the superior court and the district court . . . . Each clerk has a number of assistants and deputies.") (available at www.nccourts.org). Accordingly, the Office of the Randolph County Clerk of Superior Court arguably could have returned the subpoena at issue as undeliverable. Instead, said Office took the more responsible approach of directing the subpoena at issue to an assistant clerk knowledgeable about criminal cases in Randolph County, who then acted upon the subpoena at issue by filing the instant Motion. At that point, Plaintiff, rather than acknowledging that he erroneously addressed the subpoena at issue to a non-existent position and considering himself fortunate that no one tried to gain a tactical advantage from his error, attempted to turn to his own tactical advantage the responsible conduct of the Office of the Randolph County Clerk of Superior Court. (<u>See</u> Docket Entry 67 at 3 ("The subpoena was issued to and served upon the Court Clerk. Therefore, only the Court Clerk, not one of her assistants, had standing to object to the subpoena. If Randolph County District Court does not have a separate Court Clerk from the Randolph County Superior Court, then the subpoena was properly served upon Pam Hill, the Randolph County Superior Court Clerk, not her assistant. As Ms. Hill did not object to the subpoena, the [instant] Motion is moot and Ms. Hill must be ordered to comply with the subpoena.").) The Court rejects (and indeed takes a very dim view of) this ill-conceived attempt at gamesmanship by Plaintiff and will proceed to analyze the instant Motion over his "lack-of-standing"/mootness objection(s). As the Court has cautioned Plaintiff concerning another of his filings (<u>see</u> Text Order dated Apr. 23, 2014), employing overly aggressive litigation tactics ill-serves his cause.

3

actual notice of the instant Motion and the entire contents thereof no later than April 23, 2014, because, on that date, the Court directed "the Office of the Clerk [of this Court to] contact Plaintiff at the telephone number he ha[d] provided . . . [to] inquire if he ha[d] received [the instant Motion] and . . . [,] if he ha[d] not received [it], [to] read it aloud." (Text Order dated Apr. 23, 2014; see also Telephone Notice dated Apr. 23, 2014 (reflecting that Deputy Clerk spoke with Plaintiff).) In addition, when Plaintiff responded in opposition to the instant Motion, he reported receiving from Assistant Clerk Haynes, on April 25, 2014, a physical copy of the instant Motion, but did not identify the manner of receipt. (See Docket Entry 67 at 3.)

## DISCUSSION

As an initial matter, Plaintiff contends the Court should deny the instant Motion as untimely. (See id. at 2-3.) Specifically, Plaintiff asserts as follows:

> Rule 45 bars the Court from granting a Motion to Quash if it was not served on the Party requesting the subpoena in a timely manner. <u>Rule 45 defines timely as it relates to the filing of a Motion to Quash as having it served upon the Party that requested it within 14 days from the date of service</u>. Therefore, the Court is barred from granting a Motion to Quash unless it was served on the Party that requested the subpoena within 14 days of the date of service regardless of the objections raised in the Motion or the counter-arguments of the Party that requested the subpoena. In this case, the Motion was not served in a timely manner as defined in Rule 45. [Plaintiff's wife] served the subpoena . . . on April 7, 2014. The [instant Motion] was not filed with the Court until April 22, 2014 and was not served on [] Plaintiff until April 25, 2014. Regardless of whether the Court uses the filing date of the [instant Motion] or the service date of the [instant Motion], the [instant] Motion is not timely.

4

(Id. at 2 (emphasis added).) In fact, however, the cited rule does not operate as Plaintiff suggests.

The 14-day requirement referenced by Plaintiff appears in the portion of said rule that addresses <u>objections</u> to subpoenas, one mechanism for "[p]rotecting a [p]erson [s]ubject to a [s]ubpoena." Fed. R. Civ. P. 45(d)(2)(B) ("<u>Objections</u>. A person commanded to produce documents or tangible things or to permit inspection <u>may serve</u> on the party or attorney designated in the subpoena a written <u>objection</u> to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises -- or to producing electronically stored information in the form or forms requested. <u>The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served</u>." (emphasis added)). Separately (but still within the paragraph entitled "Protecting a Person Subject to a Subpoena; Enforcement"), said rule also provides that:

> On <u>timely motion</u>, the court for the district where compliance is required <u>must quash or modify</u> a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).

This language thus mandates, inter alia, that "[a] court *must* quash [or modify] a subpoena, 'on *timely* motion,' when the subpoena

5

. . . subjects a person to an undue burden. Th[e] examination [of the timeliness of a motion to quash] is slightly different than asking whether [a subpoena recipient] *objected* to the subpoena in a timely fashion." Bell Inc. v. GE Lighting, LLC, No. 6:14CV12, 2014 WL 1630754, at *9 (W.D. Va. Apr. 23, 2014) (unpublished) (internal citation omitted) (emphasis in original). In particular, "[u]nlike with objections, Rule 45 does not specify what 'timely' means for filing motions to quash subpoenas." Id.; see also WM High Yield v. O'Hanlon, 460 F. Supp. 2d 891, 894 (S.D. Ind. 2006) (observing that Federal Rule of Civil Procedure 45 "is silent as to what constitutes a 'timely' motion" and "does not require a person served with an objectionable subpoena to follow its directives [regarding objections] in lieu of filing a motion to quash").

Moreover, "[i]n the 1991 amendments to the Federal Rules, the word 'timely' replaced the phrase, 'promptly and in any event at or before the time specified in the subpoena for compliance therewith.'" Nova Biomed. Corp. v. i-STAT Corp., 182 F.R.D. 419, 422 (S.D.N.Y. 1998). "The 1991 amendment states that the new revision is to 'clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence.'" Id. (quoting Fed. R. Civ. P. 45, 1991 amend., advisory comm. nn.) (emphasis added); see also WM High Yield, 460 F. Supp. 2d at 894 ("[T]he 1991 amendments to Rule 45 . . . were designed to afford greater protections to those served with a subpoena than were available prior to amendment . . . ."). "Because this language indicates that the revised rule takes no

6

rights away from the party subpoenaed, and in fact is to enlarge that party's protections, . . . the subpoenaed party has at least as much time to move to quash as it previously did. Thus, . . . service [of a motion to quash] anytime before [a] subpoena['s] return date should be considered timely." Nova Biomed., 182 F.R.D. at 422; accord, e.g., Wells Fargo Bank, N.A. v. MPC Investors, LLC, No. 09CV11249, 2010 WL 3259371, at *2 (E.D. Mich. Aug. 2, 2010) (unpublished), recommendation adopted, 2010 WL 3259369 (E.D. Mich. Aug. 18, 2010) (unpublished); Flagstar Bank, FSB v. Freestar Bank, N.A., No. 09C1941, 2009 WL 2706965, at *3 (N.D. Ill. Aug. 25, 2009) (unpublished); WM High Yield, 460 F. Supp. 2d at 894-95. In this case, as documented in the preceding section, Assistant Clerk Haynes filed the instant Motion two weeks before the return date of the subpoena at issue, making the instant Motion timely.[3]

---

[3] Even if the 14-day period in Federal Rule of Civil Procedure 45(d)(2)(B) applied to the instant Motion, Plaintiff's untimeliness challenge likely would fail. First, if (as it appears) Plaintiff's wife served the subpoena at issue by placing it in the mail on April 7, 2014, the recipient would have received an additional three days to serve any objections. See Fed. R. Civ. P. 6(d). Further, as documented in the Background section, Plaintiff admitted receiving a copy of the instant Motion on April 25, 2014, and, if (as seems plausible) counsel for Assistant Clerk Haynes placed that copy in the mail on or before April 24, 2014, service occurred within 17 days. See Fed. R. Civ. P. 5(b)(2)(C). In any event, because (as shown in the preceding section) the Court gave Plaintiff actual notice of the instant Motion and its contents on April 23, 2014, within 17 days of service by mail of the subpoena at issue, the Court likely would find good cause to excuse any non-compliance by Assistant Clerk Haynes with the deadline in Federal Rule of Civil Procedure 45(d)(2)(B). See generally Ace Hardware Corp. v. Celebration Ace Hardware, LLC, No. 09CV66, 2009 WL 3242561, at *2 (D. Del. Oct. 8, 2009) (unpublished) ("Courts have exercised their discretion to consider motions to quash that were not 'timely' filed within the meaning of Rule 45.").

Turning to the merits of the instant Motion, as noted above, the Court "must quash or modify a subpoena . . . that subjects a person to an undue burden." Fed. R. Civ. P. 45(d)(3)(A). "Whether a subpoena imposes upon a witness an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. Moreover, [the movant's] status as a non-party entitles him to consideration regarding expense and inconvenience." <u>Nova Biomed.</u>, 182 F.R.D. at 422-23 (internal citations and quotation marks omitted). The subpoena at issue demands production of "[a]ll documents, records, Court Files, Orders, transcripts, recordings, communications, e-mails, voicemails, or text messages related to Case 12CR53047 and/or a hearing scheduled and/or held in Randolph County District Court in July 2012 in Case 12CR53047." (Docket Entry 63-1 at 2.) According to the instant Motion, Assistant Clerk Haynes's "memorandum with attached notes from the District Court file . . . proves that [P]laintiff has received everything that exists in the file." (Docket Entry 63 at 2.) As a result, Assistant Clerk Haynes asks the Court to quash the subpoena at issue on the grounds that it qualifies as "unreasonable and oppressive," as well as "an attempt to harass" (<u>id.</u>), i.e., that the subpoena at issue imposes an undue burden.

In relevant part, the "memorandum" from Assistant Clerk Haynes appended to (and referenced in) the instant Motion states:

8

> [Plaintiff's] case was not heard in any court in Randolph County in July of 2012, the only action in his case was the Grand Jury meeting on July 09, 2012 to consider indictments. <u>This office is not in possession of any records or items of the Grand Jury except for the indictments signed by the foreperson at the conclusion of the Grand Jury meeting</u>. [Plaintiff's] case does include an Indictment in file number 12CR53047 on the charge of Larceny by Employee signed by the Grand Jury Foreperson on 07/09/2012. <u>Recordings, transcripts, etc. for anything concerning the Grand Jury meeting on 07/09/2012 do not exist in the file or any records held by the Clerk's Office</u>.
>
> [Plaintiff] was subsequently re-indicted by the Grand Jury on 07/08/2013 on a superseding indictment on the charges of 2 counts of Obtaining Property by False Pretenses, also properly signed by the Grand Jury Foreperson. <u>Again, the Clerk's Office does not have any records of that meeting except the Indictment</u>.
>
> [Plaintiff] mentioned to Judge Stone in Superior Court on 09/09/2013 that he never received copies of his Indictments. Judge Stone ordered the courtroom clerk to provide <u>certified copies of both indictments</u> to [Plaintiff], free of charge, and instructed [Plaintiff] to go to the Clerk's Office and get his copies. The courtroom clerk called me in my office and told me these instructions. I personally prepared the copies and waited for [Plaintiff], who never came to the Clerk's Office. By the close of business on 09/11/2013 [Plaintiff] still never appeared in the Clerk's Office to retrieve his copies, so <u>I mailed the certified copies</u> by first class mail with the proper postage affixed to [Plaintiff's] address of 148 Renola Drive, Archdale, NC 27263. <u>There is nothing further that anyone in this office can provide [Plaintiff] concerning any time in July, 2012</u> that he does not already possess.

(Docket Entry 63-2 at 1.) The "notes from the District Court file" referenced in the instant Motion similarly indicate that, on September 9, 2013, Assistant Clerk Haynes mailed certified copies of the original and superseding indictments in case number 12CR53047 to Plaintiff's address. (See id. at 2.) These materials do not warrant quashing the subpoena at issue in its entirety.

9

First, the Court cannot conclude from the above-discussed memorandum and related notes that Assistant Clerk Haynes previously mailed Plaintiff a copy of "everything that exists in the file" for case number 12CR53047. Said materials indicate that Assistant Clerk Haynes mailed Plaintiff certified copies of the original and superseding indictments in said file, that said file does not contain transcripts, recordings, or other records of the grand jury proceedings that resulted in the return of those two indictments, and that said file does not contain any items (other than the original indictment) "concerning any time in July, 2012." (Id. at 1-2.)[4] However, nothing in said materials establishes that the court file for case number 12CR53047 consists only of the original and superseding indictments, copies of which Assistant Clerk Haynes has represented he previously mailed to Plaintiff. (See id.) Further, Plaintiff may contend that he never received the copies of the two indictments Assistant Clerk Haynes has reported mailing to Plaintiff's address (see Docket Entry 67 at 5) and Plaintiff does report a desire to obtain copies of court file material from an identifiable custodian in the event he needs to present such material as evidence at trial (see id. at 6). Finally, the North Carolina Administrative Office of the Courts recently acknowledged that "individual criminal [court] records of the clerks of court are public records and that the clerks are the custodians of those

---

[4] The fact that Assistant Clerk Haynes emphasized the last point may suggest a lack of recognition that the subpoena at issue seeks documents related to case number 12CR53047 generally and not just as to proceedings in July 2012. (See Docket Entry 63-1 at 2.)

records." Lexisnexis Risk Data Mgmt. Inc. v. North Carolina Admin. Office of the Courts, ___ N.C. App. ___, ___, 754 S.E.2d 223, 227 (2014). Given all of these considerations, the Court does not deem it unduly burdensome to require the production of a copy of the contents of the state court file for case number 12CR53047 (a public record of recent vintage which one would expect to remain readily-accessible to Assistant Clerk Haynes).

The subpoena at issue, however, demands more than just the contents of the state court file for case number 12CR53047 (or items one would expect to find in a court file, such as orders and transcripts). In particular, it seeks production of "[a]ll documents, records, . . . communications, e-mails, voicemails, or text messages related to Case 12CR53047 . . . ." (Docket Entry 63-1 at 2 (emphasis added).) "[Document] requests must 'place the respondents on reasonable notice of what is called for and what is not.'" Preferred Carolinas Realty, Inc. v. American Home Realty Network, Inc., No. 1:13CV181, 2014 WL 1320133, at *3 (M.D.N.C. Mar. 28, 2014) (unpublished) (quoting Parsons v. Jefferson-Pilot Corp., 141 F.R.D. 408, 412 (M.D.N.C. 1992)). Moreover, as another court well-explained nearly two decades ago:

> Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request. The court does not find that reasonable discovery contemplates that kind of wasteful effort.

Audiotext Commc'ns Connections USA, Inc. v. U.S. Telecom, Inc., No. CIV. A. 94-2395-GTV, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995) (unpublished); see also Nova Biomed., 182 F.R.D. at 422-23 ("Whether a subpoena imposes upon a witness an undue burden depends upon such factors as . . . the breadth of the document request [and] . . . the particularity with which the documents are described." (internal quotation marks omitted)).

Further, and of direct application to the subpoena at issue, "[a] request for all documents 'relating to' a subject is usually subject to criticism as overbroad since . . . all documents 'relate' to all others in some remote fashion. Such a request thus unfairly places the onus of non-production on the recipient of the request and not where it belongs -- upon the person who drafted such a sloppy request." Massachusetts v. United States Dep't of Health & Human Servs., 727 F. Supp. 35, 36 n.2 (D. Mass. 1989); see also In re NCAA Student-Athlete Name & Likeness Licensing Litig., Nos. C09-1967 CW (NC), MC 11-80300 CW (NC), MC 12-80020 CW (NC), 2012 WL 629225, at *5 (N.D. Cal. Feb. 27, 2012) (unpublished) ("The Big Ten Conference objects to producing any documents that 'relate to' the consent forms or to policies concerning the consent forms, as searching for these documents would be unduly burdensome given the current wording of the document requests. . . . The portions of the document requests that call for material other than the exemplar consent forms themselves are overly broad . . . because they contain no meaningful limitations to reduce the burden on the nonparties of producing responsive documents."), aff'd, 2013 WL

1285588 (N.D. Cal. Mar. 28, 2013) (unpublished). In sum, the subpoena at issue "use[s] the term[] 'relate[d] to' . . . in a way that makes [it] overbroad, vague, and ambiguous. Because [such] terms are broad, they might well encompass irrelevant information. Nor can [the respondent] be certain exactly what information the [subpoena at issue] cover[s] and therefore what information is responsive." Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Fla., Inc., No. 10-80241-CIV, 2010 WL 5093746, at *6 (S.D. Fla. Dec. 8, 2010) (unpublished). As a result, the Court will modify the subpoena at issue to require production only of the contents of the state court file for case number 12CR53047.

CONCLUSION

Although aspects of the subpoena at issue sweep too broadly, production of a single state court file would not unduly burden Assistant Clerk Haynes.

**IT IS THEREFORE ORDERED** that Assistant Clerk Haynes's Objection to Subpoena and Motion to Quash (Docket Entry 63) is **GRANTED IN PART AND DENIED IN PART** in that the subpoena at issue is modified to require production only of a copy of the contents of the state court file for case number 12CR53047.

                                    /s/ L. Patrick Auld
                                      **L. Patrick Auld**
                         **United States Magistrate Judge**
May 2, 2014